IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

CHOICE PAIN & REHABILITATION       *
CENTER, LLC,

                           *

      Plaintiff,                                      Case No. 8:25-cv-01449-TJS

                           *

v.

                           *

UNITED BEHAVIORAL HEALTH, INC.,
doing business as OPTUM MARYLAND,     *

      Defendant.                    *

*       *       *       *       *       *

**MEMORANDUM OPINION**

Pending before the Court is the Motion to Dismiss ("Motion") filed by Defendant United

Behavioral Health, doing business in Maryland as Optum Maryland ("Optum Maryland").[1] ECF

No. 25. Having considered the parties' submissions, I find that a hearing is unnecessary. *See* Loc.

R. 105.6. For the following reasons, the Motion will be granted, and the case will be dismissed

with prejudice.

**I.**      **Background**

Plaintiff Choice Pain & Rehabilitation Center, LLC ("Choice Pain") is a Maryland-based,

African American-owned business that provides healthcare to Medicaid-qualified individuals and

seeks reimbursement for its services from the State of Maryland. *Choice Pain & Rehab. Ctr., LLC

v. Optum, Inc.*, No. DLB-24-2144, 2025 WL 948294, at *1 (D. Md. Mar. 28, 2025) ("*Choice Pain

I*"). In 2019, Optum Maryland was awarded a contract to serve as the Administrative Services

---

[1] In accordance with 28 U.S.C. § 636(c), all parties have voluntarily consented to have the undersigned conduct all further proceedings in this case, including trial and entry of final judgment, and conduct all post-judgment proceedings, with direct review by the Fourth Circuit Court of Appeals if an appeal is filed. ECF No. 16.

Organization for Maryland's Public Behavioral Health System by the Maryland Department of Health ("MDH"). ECF No. 21 ¶ 15. Under its contract, Optum Maryland was responsible for managing and processing Medicaid claims submitted by healthcare providers in Maryland through December 31, 2024. *Id.* Choice Pain operates a toxicology laboratory that performs drug testing for patients receiving chronic pain management services. *Id.* ¶ 28. It submits claims for reimbursements to its patients' insurance providers, including Maryland Medicaid, which claims are processed by Optum Maryland. *Id.* ¶ 30. For each claim it submits, Choice Pain must include its National Provider Identification ("NPI") number and specific billing codes. *Id.* ¶ 31. Choice Pain's NPI is at the heart of each of its claims against Optum Maryland.

Choice Pain obtained an initial NPI in 2019 but obtained a new NPI for its toxicology lab in January 2021. *Id.* ¶ 32. Immediately upon obtaining its new NPI for the toxicology lab, Choice Pain provided the NPI to Optum Maryland and MDH. *Id.* Up until January 2022, Optum Maryland "routinely and promptly reimbursed Choice Pain" for its toxicology claims. *Id.* ¶ 34. But beginning in January 2022, Optum Maryland began denying or rejecting all claims submitted by Choice Pain under certain billing codes. *Id.* ¶ 35. Choice Pain "immediately inquired about these sudden denials," but Optum Maryland's only response was that it was "following MDH guidance." *Id.* ¶ 36. Optum Maryland gave Choice Pain no instructions about the steps it needed to take to rectify the problem. *Id.* Choice Pain objected to Optum Maryland's denials from January 2022 through May 2022. *Id.* ¶ 37. Optum Maryland's denials of Choice Pain's claims resulted in over $450,000 in lost revenue for January 2022 through May 2022. *Id.* ¶ 49. Because of Optum Maryland's continued denials, Choice Pain redirected nearly 5,000 toxicology samples to an outside toxicology laboratory for the period of June 2022 through November 2022, resulting in nearly $600,000 in lost revenue for Choice Pain. *Id.* ¶ 50.

In November 2022, Choice Pain filed a complaint with MDH about Optum Maryland's denials of its claims for reimbursement for the period of January 2022 through May 2022. *Id.* ¶ 53. MDH responded in a letter dated May 4, 2023, which is attached to the Amended Complaint:

> Your program reached out to MDH regarding the denials in November 2022 and it was determined that the denials were a result of your provider file not being set up correctly to bill the Behavioral Health Administrative Services Organization due to an issue with your NPI. Providers are responsible for updating their provider file correctly in ePrep so that they may be paid timely. Your program submitted an application for the correct NPI on November 4, 2022 and Medicaid Provider Enrollment approved the application on November 6, 2022. MDH confirmed with Optum that your corrected provider file was set up correctly in the Incedo Provider Portal to be reimbursed for toxicology services effective back to February 2021.
>
> MDH provided instructions to your organization on November 30, 2022 to rebill the claims to Optum Maryland using your new NPI. This is necessary because neither MDH nor Optum Maryland can take action on claims submitted under an unpayable NPI. Optum Maryland has confirmed payment of some claims from the time period identified in your letter. Please continue to rebill any additional outstanding claims from that time. If you have any questions concerning claims processing, please contact Donna Shipp with Optum Maryland's Provider Relations division[.]

ECF No. 21-3 at 2.

In April 2023, Optum Maryland began making payments on some of Choice Pain's resubmitted and previously denied claims. ECF No. 21 ¶ 58.

Choice Pain brings four claims against Optum Maryland. Count I is for negligence. Choice Pain alleges that Optum Maryland owed it a duty of care arising from an intimate nexus between the parties, federal and state statutes imposing duties on Optum Maryland for claims processing, and the special relationship created by Optum Maryland's exercise of governmental authority. Count II is for negligent misrepresentation. Choice Pain alleges that Optum Maryland made several false statements to Choice Pain, in violation of its duty of care to relay accurate information about claims processing requirements. In Count III, Choice Pain alleges that Optum Maryland breached its fiduciary duty to Choice Pain. And in Count IV, Choice Pain brings a claim under 42

U.S.C. § 1983 for deprivation of its rights under 42 U.S.C. § 1396a(a)(37)(A). Optum Maryland has moved to dismiss and its Motion is fully briefed and ripe for decision.

On March 28, 2025, Judge Boardman dismissed a complaint by Choice Pain against Optum Maryland in an earlier version of this case. *Choice Pain I*, 2025 WL 948294, at *9. Now Choice Pain makes a second attempt to hold Optum Maryland liable for what it alleges are violations of its statutory and common law rights. But for many of the same reasons as the Court expressed in *Choice Pain I*, its Amended Complaint fails to state a claim upon which relief can be granted. Because Choice Pain has been afforded sufficient opportunities to advance its legal theories against Optum Maryland, its claims in the Amended Complaint will be dismissed with prejudice.

## II.     Legal Standard

Rule 12(b)(6) permits a court to dismiss a complaint if it fails to "state a claim upon which relief can be granted." "The purpose of a Rule 12(b)(6) motion is to test the sufficiency of a complaint, [and not to] resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999). A complaint must contain "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted). And a complaint must consist of "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

When considering a motion to dismiss, a court must accept as true the well-pled allegations of the complaint and "construe the facts and reasonable inferences derived therefrom in the light

most favorable to the plaintiff." *Ibarra v. United States*, 120 F.3d 472, 474 (4th Cir. 1997). While a court must take the facts in the light most favorable to the plaintiff, it "need not accept the legal conclusions drawn from the facts" and "need not accept as true unwarranted inferences, unreasonable conclusions, or arguments." *E. Shore Markets, Inc. v. J.D. Assocs. Ltd. P'ship*, 213 F.3d 175, 180 (4th Cir. 2000).

"Federal Rule of Civil Procedure 8(a)(2) requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Twombly*, 550 U.S. at 555 (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). A complaint generally "does not need detailed factual allegations." *Id.* So long as the factual allegations are "enough to raise a right to relief above the speculative level," the complaint will be deemed sufficient. *Id.* A "well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable and that a recovery is very remote and unlikely." *Id.* at 556 (internal quotation marks omitted). Nonetheless, merely reciting a claim's elements "and supporting them by conclusory statements does not meet the required standard." *Sheppard v. Visitors of Va. State Univ.*, 993 F.3d 230, 234 (4th Cir. 2021) (quoting *ACA Fin. Guar. Corp. v. City of Buena Vista, Va.*, 917 F.3d 206, 212 (4th Cir. 2019)).

## III.    Analysis

### A.    Negligence (Count I) and Negligent Misrepresentation (Count II)

To state a negligence claim under Maryland law, a plaintiff must allege that the defendant was under a duty to protect the plaintiff from injury, that the defendant breached that duty, that the plaintiff suffered injury or loss, and that the plaintiff's injury or loss was the proximate result of

the defendant's breach of duty.[2] *Steamfitters Loc. Union No. 602 v. Erie Ins. Exch.*, 469 Md. 704, 727 (2020). And to state a claim for negligent misrepresentation, a plaintiff must allege that the defendant owed a duty of care to the plaintiff, that the defendant "negligently assert[ed] a false statement," that the defendant intended the plaintiff to act upon his statement, that the defendant had knowledge that the plaintiff's reliance on the erroneous statement would likely cause loss or injury, that the plaintiff justifiably took action in reliance on the statement, and that the plaintiff suffered damage proximately caused by the defendant's negligence. *Hunter v. Abbott Laboratories, Inc.*, No. BAH-25-1544, 2026 WL 479085, at *11 (D. Md. Feb. 20, 2026). Under both types of claims, a plaintiff must plausibly allege that the defendant owed a legal duty to the plaintiff.

The Court determines whether a duty exists as a matter of law. *H&M Co., Inc. v. Technical Heat Transfer Servs., Inc.*, No. TDC-14-1518, 2015 WL 1472000, at *5 (D. Md. Mar. 30, 2015). "Absent a duty of care, there can be no liability in negligence." *Walpert, Smullian & Blumenthal, P.A. v. Katz*, 361 Md. 645, 655 (2000); *Choice Pain I,* 2025 WL 948294, at *6.

In *Choice Pain I*, Judge Boardman summarized the Maryland law of duty:

A "duty" is "an obligation, to which the law will give recognition and effect, to conform to a particular standard of conduct toward one another." *100 Inv. Ltd. P'ship v. Columbia Town Ctr. Title Co.*, 60 A.3d 1, 10 (Md. 2013) (quoting *Blondell v. Littlepage*, 991 A.2d 80, 94 (Md. 2010)). And "whether 'an actionable duty exists represents a policy question of whether the specific plaintiff is entitled to protection

---

[2] For the state law claims in this case, the Court applies the substantive law and choice of law rules of the state in which it sits. *See State Farm Fire & Cas. Co. v. Huguely*, 432 F. Supp. 3d 587, 591 (D. Md. 2020) (citing *Erie R.R. Co. v. Tompkins*, 304 U.S. 64 (1938)). Maryland adheres to the *lex loci delicti* rule to determine the applicable law in tort actions. *Philip Morris, Inc. v. Angeletti*, 358 Md. 689, 744 (2000). Under this rule, the "substantive tort law of the state where the wrong occurs governs." *Hauch v. Connor*, 295 Md. 120, 123 (1983). Because all events occurred in Maryland, Maryland law applies. In addition, the Court notes that both parties have applied Maryland law in their briefs, which provides a secondary basis for the Court to apply Maryland law. *See Chorley Enters., Inc. v. Dickey's Barbecue Restaurants, Inc.*, 807 F.3d 553, 563 n.11 (4th Cir. 2015).

from the acts of the defendant.'" *Id.* (quoting *Blondell*, 991 A.2d at 94). Courts are reluctant to extend tort liability in new contexts. *See, e.g.*, *Balfour Beatty Infrastructure, Inc. v. Rummel Klepper & Kahl, LLP*, 155 A.3d 445, 459–62 (Md. 2017) (declining to extend tort liability in the context of construction projects "because the complex web of contractual arrangements predominates and injecting a tort duty is not in the public interest"); *Jones v. Hyatt Ins. Agency, Inc.*, 741 A.2d 1099, 1108–09 (Md. 1999) (declining to extend tort liability of an insurance agency to third-party beneficiaries after the insurance agency failed to procure liability insurance for an insured); *Erie Ins. Co. v. Chops*, 585 A.2d 232, 235 (Md. 1991) (declining to extend tort liability where a statute imposed a duty on automobile insurers to notify motor vehicle administration of cancellation of automobile insurance policy and "the statute did not create a legally cognizable duty running from [the insurer] to all persons who might thereafter suffer economic damage by reason of involvement in an accident with an uninsured motorist").

*Choice Pain I*, 2025 WL 948294, at *7.

Courts consider two main factors when deciding whether to recognize a duty: "the nature of the harm likely to result from a failure to exercise due care, and the relationship that exists between the parties." *Jacques v. First Nat. Bank of Maryland*, 307 Md. 527, 534 (1986). "Where the failure to exercise due care creates a risk of economic loss only, courts have generally required an intimate nexus between the parties as a condition to the imposition of tort liability." *Id.* An "intimate nexus" exists when the parties are in "contractual privity or its equivalent." *Id.*

In *Choice Pain I*, Judge Boardman explained that Optum Maryland's alleged conduct created a risk of economic loss only. 2025 WL 948294, at *7. And because Choice Pain did not allege contractual privity with Optum Maryland, the Court could only find that Optum Maryland owed Choice Pain a duty based on plausible allegations that Choice Pain "had such a close relationship with the defendant that it relied on the defendant's exercise of due care" and that Optum Maryland knew or should have known of Choice Pain's reliance. *Id.* (citing *Balfour Beatty*, 155 A.3d at 456). Judge Boardman determined that Choice Pain failed to plausibly allege an intimate nexus with Optum Maryland because Choice Pain was "but one among an indeterminate

7

class" such that Optum Maryland did not owe it a duty of care. *Id.* (internal quotation marks omitted). Judge Boardman explained:

> Choice Pain alleges that Optum Maryland manages Maryland's Public Behavior[al] Health System, which includes the management and processing of claims submitted by providers like Choice Pain. But Choice Pain does not allege how many providers like Choice Pain exist. The providers may be so numerous—new providers opening daily, others closing—that Choice Pain is but one among an indeterminate class. And even though Optum Maryland had processed Choice Pain's reimbursement claims before . . . that fact alone does not make Choice Pain a foreseeable plaintiff. A defendant may know that others will rely on it, but that knowledge does not, by itself, give rise to a duty of care between the defendant and a plaintiff. Further, Choice Pain cites no cases that have found a health insurance claims administrator owes a medical provider a duty to exercise due care in the processing of the provider's claims for reimbursement. The health insurance industry, like the government contract industry, includes a notoriously complex web of contractual arrangements. Under these circumstances, and upon consideration of the facts alleged by Choice Pain, the Court will not extend tort liability to Optum Maryland.

*Id.* (internal citations omitted) (internal quotation marks omitted).

Following *Choice Pain I*, Judge Hurson adopted the same reasoning in a case brought against Optum Maryland by a different but similarly situated plaintiff:

> Judge Boardman determined that the Choice Pain plaintiff had failed to allege how many providers like it existed and thus whether it was part of an "indeterminate class" such that it would not be a "foreseeable" plaintiff. This Court finds that the same outcome is warranted here, where [the plaintiff] has [likewise] not provided any indication of the nature of the relationship between itself and [the defendant], only that [the defendant] was awarded the ASO claim for the State of Maryland. Accordingly, [the plaintiff] has not pled facts sufficient for the Court to draw the reasonable inference that there existed a sufficiently close relationship between [the plaintiff] and [the defendant] such that would support finding a duty of care.

*Healthcare Living for Fams., Inc. v. Optum, Inc.*, No. BAH-25-79, 2025 WL 2300720, at *7 (D. Md. Aug. 8, 2025) ("*HCLF*").

The Court finds that Choice Pain has failed to plausibly allege that Optum Maryland owed it a duty of care. Because the Amended Complaint does not allege any injury to person or property, the economic loss rule applies. Under this rule, Choice Pain can only establish that Optum

Maryland owed it a duty of care if it can plead that the parties had a sufficiently close relationship. Close relationships of the kind required to establish an intimate nexus are most often found in professional occupations, where a client relies on the services of a professional (such as an attorney or physician), and where the professional knows of such reliance. *See Chevron U.S.A. Inc. v. Apex Oil Co., Inc.*, 113 F. Supp. 3d 807, 823 (D. Md. 2015) ("Maryland courts have recognized an "independent duty" in several contexts—including those involving professional occupations, vulnerable parties, and principal-agent relationships."). Choice Pain has not plausibly alleged such a close relationship here. And as Judge Boardman observed in *Choice Pain I*, Choice Pain has failed to proffer legal precedent holding that "a health insurance claims administrator owes a medical provider a duty to exercise due care in the processing of the provider's claims for reimbursement." *Choice Pain I*, 2025 WL 948294, at *7. For good reason, courts are generally unwilling to extend new tort duties into complex industries, even where a defendant is exercising government functions. *See id.*; *Balfour Beatty,* 155 A.3d at 462 (explaining that where a "complex web of contractual arrangements predominates [an industry]," it is "not in the public interest" to "inject[] a tort duty").

In addition, Choice Pain has failed to plausibly allege that it is anything but a member of an indeterminate class of providers that submitted Medicaid claims to Optum Maryland. No intimate nexus can exist when a plaintiff is part of an indeterminate class. *See 100 Inv. Ltd. P'ship v. Columbia Town Ctr. Title Co.*, 430 Md. 197, 218 (2013); *Walpert*, 361 Md. at 671. Choice Pain does not allege how many providers submitted Medicaid claims to Optum Maryland. *See* ECF No. 21 ¶¶ 28-29. And as Optum Maryland correctly notes, an exhibit to the Amended Complaint shows that there are over 2,100 behavioral health providers in MDH's Medicaid program. ECF No. 29 at 9 (citing ECF No. 21-2 at 20).

Choice Pain also does not allege any special interactions that it had with Optum Maryland that would have shown a relationship of dependence and reliance, such that Optum Maryland should have known of Choice Pain's special reliance. Instead, the Amended Complaint relies on conclusory assertions that Optum Maryland knew or should have known of Choice Pain's reliance on it to process the claims it submitted. *See* ECF No. 21 ¶¶ 33, 36, and 39. The fact that Optum Maryland was responsible for processing Choice Pain's claims does not mean that Choice Pain was a foreseeable plaintiff giving rise to a duty by Optum Maryland under Maryland law.

Choice Pain argues that state and federal statutes evince a tort duty on Optum Maryland. ECF No. 28 at 16. But Counts I and II of the Amended Complaint make no reference to these statutes. And Choice Pain's response brief cites no authority to support its argument that the laws it cites create individual rights to payment for Medicaid providers like Choice Pain. Indeed, courts that have addressed the issue have found that the laws create no such rights. *See Bio-Med. Applications of NC, Inc. v. Elec. Data Sys. Corp.*, 412 F. Supp. 2d 549, 553 (E.D.N.C. 2006) (finding that 42 U.S.C. § 1396a(a)(37)(A) does not create an individual right); *In re Managed Care Litig.*, 298 F. Supp. 2d 1259, 1300 (S.D. Fla. 2003) (finding that Maryland's prompt pay statute does not create a private right of action).

Finally, the Court rejects Choice Pain's argument that it is inappropriate at this stage for a court to determine whether a tort duty has been plausibly alleged. The Court notes that it is in good company in doing so. *See Choice Pain I*, 2025 WL 948294, at *7-8; *HCLF*, 2025 WL 2300720, at *6-7; *Washington Cnty. Bd. of Educ. v. Mallinckrodt ARD, Inc.*, 431 F. Supp. 3d 698, 717 (D. Md. 2020); *Saravia v. Select Portfolio Servicing, Inc.*, No. RDB-13-1921, 2014 WL 2865798, at *4 (D. Md. June 23, 2014); *Aloi v. Moroso Inv. Partners, LLC*, No. DKC-11-2591, 2012 WL 4341741, at *7 (D. Md. Sept. 20, 2012).

Choice Pain has failed to plead facts sufficient to plausibly allege an intimate nexus between itself and Optum Maryland that would give rise to a tort duty under Maryland law. For this reason, Choice Pain's negligence and negligent misrepresentation claims fail as a matter of law.[3] The Motion will be granted as to Counts I and II. Considering the procedural history of this case dating back to *Choice Pain I*, the dismissal will be with prejudice. The Amended Complaint is Plaintiff's third attempt to recover against Optum Maryland for negligence and negligent misrepresentation. Its negligence claims against Optum Maryland are truly incurable. *See McLean v. United States*, 566 F.3d 391, 401 (4th Cir. 2009) (abrogated on other grounds). Any further amendment would be unduly prejudicial to Optum Maryland and futile.

**B.    Breach of Fiduciary Duty (Count III)**

To state a claim for breach of fiduciary duty, a plaintiff must plead "(1) the existence of a fiduciary relationship; (2) breach of the duty owed by the fiduciary to the beneficiary; and (3) harm to the beneficiary." *Tchorzewski v. Musick*, No. CCB-21-1243, 2022 WL 2135376, at *3 (D. Md. June 13, 2022) (citing *Plank v. Cherneski*, 469 Md. 548, 559 (2020)). A fiduciary relationship "involves a duty on the part of the fiduciary to act for the benefit of the other party to the relation as to matters within the scope of the relation." *Buxton v. Buxton*, 363 Md. 634, 654 (2001) (quoting Scott & Fratcher, *The Law of Trusts*, § 2.5 (4th ed. 1988)); *HCLF*, 2025 WL 2300720, at *7. "[F]iduciary relationships can be created by common law, by statute, or by contract." *Plank*, 231 A.3d at 465. "Well-known examples of habitual or categorical fiduciary relationships include those between trustees and beneficiaries, agents and principals, directors and corporations, lawyers and clients, and guardians and wards, as well as the relationship among partners." *Id.* "Normally, the

---

[3] Because Plaintiff failed to plead a legal duty, the Court declines to consider whether Plaintiff also failed to plead the remaining elements of negligence and negligent misrepresentation.

11

determination of whether a fiduciary relationship exists between two individuals is a question of fact." *Textron Sys. Corp. v. Barzan Aeronautical LLC*, No. JRR-23-2828, 2024 WL 4135425, at *13 (D. Md. Sept. 10, 2024) (quoting *McElwee v. Williams*, No. 1194, Sept. Term, 2019, 2020 WL 6748799, at *3 (Md. Ct. Spec. App. Nov. 17, 2020) (citing *Brass Metal Products, Inc. v. E-J Enters., Inc.*, 189 Md. App. 310, 355 (2009))). "When the facts do not support a finding" of a fiduciary relationship, however, a court "may properly decide the issue as a matter of law." *Textron*, 2024 WL 4135425, at *13 (internal citations omitted) (internal quotation marks omitted).

Choice Pain alleges that a fiduciary relationship existed between itself and Optum Maryland based on Optum Maryland's performance of a governmental function and Choice Pain's reliance on Optum Maryland as the sole-provider of this function.[4] ECF No. 21 ¶ 71; *see also* ECF No. 28 at 29. Judge Hurson rejected this very argument in *HCLF,* 2025 WL 2300720, at *8 ("The Court determines that this argument insufficiently alleges the existence of a fiduciary relationship."), and dismissed an identical claim brought by another provider. I agree with Judge Hurson's reasoning and adopt it here.

Choice Pain's conclusory allegations of reliance are insufficient to plead a fiduciary relationship. *See Textron*, 2024 WL 4135425, at *13. And its argument that Optum Maryland's exercise of governmental authority through its fulfillment of a contract with MDH gives rise to a

---

[4] Choice Pain does not allege that a fiduciary duty arose based on the common law, statute, or contract. Instead, it alleges the existence of a fiduciary duty based on "(a) Optum's exclusive designation by the MDH as the ASO for Maryland's Public Behavioral Health System; (b) Optum's exclusive governmental authority over Medicaid claims processing, including Choice Pain's Medicaid claims; (c) the significant power imbalance between the parties, with Optum having sole authority to determine whether Choice Pain would receive payment for services rendered to Medicaid patients; (d) Choice Pain's complete dependence on Optum, as no alternative avenue existed for processing these claims; (e) Optum's superior knowledge of the claims processing requirements and procedures; and (f) Choice Pain's reasonable trust and reliance on Optum to process its claims fairly and accurately." ECF No. 21 ¶ 71.

fiduciary duty is unsupported by any law. The cases that Choice Pain cites do not support its argument. Two of the cases deal with lead paint claims and do not discuss fiduciary duties. *See Kennedy Krieger Inst., Inc. v. Partlow*, 460 Md. 607, 651 (2018) and *Grimes v. Kennedy Krieger Inst., Inc.*, 366 Md. 29 (2001). Another case concerns a municipal defendant's refusal to permit a plaintiff to hold a prayer rally and does not mention fiduciary duties. *St. Michael's Media, Inc. v. Mayor & City Council of Baltimore*, No. ELH-21-2337, 2022 WL 137866 (D. Md. Jan. 14, 2022).

The Amended Complaint does not adequately plead that Optum Maryland owed a fiduciary duty to Choice Pain. Accordingly, as Judge Hurson did in *HCLF*, the Court will dismiss Plaintiff's claim for breach of fiduciary duty (Count III). Because of the number of opportunities that Plaintiff has had to refile and amend its claim, the dismissal will be with prejudice.

### C.      42 U.S.C. § 1983 (Count IV)

In Count IV of the Amended Complaint, Choice Pain alleges that Optum Maryland is liable under § 1983 for depriving Choice Pain of its rights under federal law. ECF No. 21 ¶¶ 75-82. Specifically, Choice Pain claims that 42 U.S.C. § 1396a(a)(37)(A) "creates an individually enforceable right by requiring state Medicaid plans to ensure prompt payment of clean claims . . . ." *Id.* ¶ 77. Choice Pain alleges that Optum Maryland acted under color of state law at all relevant times and violated § 1396a(a)(37)(A) by denying Choice Pain's "clean claims without legal basis," by failing to process the "clean claims within federally mandated timeframes," by failing to adequately provide Choice Pain with notice and explanation for denied claims, and by failing to maintain systems that allowed for timely and accurate claims processing. *Id.* ¶ 80.

Section 1983 creates a private right of action, but not a substantive right; rather, § 1983 creates "a method for vindicating federal rights elsewhere conferred." *Mendoza v. Anne Arundel Cnty., Maryland*, No. JRR-23-1383, 2025 WL 2676525, at *9 n.7 (D. Md. Sept. 18, 2025) (quoting

*Albright v. Oliver*, 510 U.S. 266, 271 (1994)). To state a claim under § 1983, a plaintiff must allege two essential elements: (1) that a right secured by the Constitution or laws of the United States was violated, and (2) that the alleged violation was committed by a person acting under the color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988). Choice Pain's § 1983 claim must be dismissed because it is not predicated on a right secured to Choice Pain under federal law.

> Section 1396a(a)(37)(A) provides that a
>
> State plan for medical assistance must provide for claims payment procedures which (A) ensure that 90 per centum of claims for payment (for which no further written information or substantiation is required in order to make payment) made for services covered under the plan and furnished by health care practitioners through individual or group practices or through shared health facilities are paid within 30 days of the date of receipt of such claims and that 99 per centum of such claims are paid within 90 days of the date of receipt of such claims.

As explained above, other courts that have examined this statute have concluded that it does not create individual rights for Medicaid providers. *See Bio-Med. Applications of NC*, 412 F. Supp. 2d at 553; *Medevac MidAtlantic, LLC v. Keystone Mercy Health Plan*, 817 F. Supp. 2d 515, 526 (E.D. Pa. 2011); *Patients' Choice Med. Ctr. of Humphries Cnty., LLC v. Off. of the Governor*, No. 08-696, 2009 WL 531861, at *4 (S.D. Miss. Mar. 3, 2009); *cf. Saint Anthony Hosp. v. Whitehorn*, 132 F.4th 962, 979 (7th Cir.), *cert. denied*, 146 S. Ct. 324, 223 L. Ed. 2d 162 (2025) ("Absent a clear directive from Congress that § 1396u-2(f) [(a timely payment provision that cross-references § 1396a(a)(37)(A))] was meant to confer upon providers an individual right to timely payments, we decline to place federal district courts in the role of Medicaid payment processors."). For the same reasons expressed by these courts, I find that § 1396a(a)(37)(A) does not create an individual right that Choice Pain may vindicate in its § 1983 claim.

Plaintiff's reliance on *Medina v. Planned Parenthood S. Atl.*, 606 U.S. 357 (2025) does not help its argument. In *Medina*, the Supreme Court held that 42 U.S.C. § 1396a(a)(23)(A) (another

14

section of the Medicaid Act) does not clearly and unambiguously confer an individual right such that a Medicaid beneficiary may sue under § 1983 for a violation of the section. The same analysis applies with equal force to Medicaid payees (healthcare providers), like Choice Pain, who attempt to use § 1983 to enforce the requirements of § 1396a(a)(37)(A). Because Choice Pain's § 1983 claim is not based on an individual right secured by federal law, Count IV must be dismissed. Since the defect in this claim cannot be cured through amendment, the dismissal will be with prejudice.

## IV.    Conclusion

For the reasons stated above, Optum Maryland's Motion to Dismiss (ECF No. 25) is **GRANTED**. Choice Pain's Amended Complaint is **DISMISSED WITH PREJUDICE**. An accompanying order follows.

Date:   March 13, 2026

_____/s/_____

Timothy J. Sullivan
Chief United States Magistrate Judge

15